# Montgomery v. Commonwealth

April 18, 1950

As Modified on Denial of Rehearing

June 23, 1950

James W. Turner, Judge

Ed H. King for appellant.

A. E. Funuk, Atty. Gen., and John B. Browning, Asst. Atty. Gen., for appellee.

MORRIS, COMMISSIONER—Affirming.

Appellant and Robert Baldridge were jointly indicted for breaking and entering a storehouse, KRS 433.190. Appellant was tried at the June 1949 term of court, found guilty and his punishment fixed at one year's imprisonment. Baldridge had been convicted at a former term. Appellant insists that he is entitled to a reversal of the judgment because, (1) the verdict is against the law and evidence; (2) the court erroneously refused to give a peremptory instruction on his motion, and lastly the court erred in the giving of instruction No. 1.

The warehouse was the property of the Spur Bottling Company in Paintsville. The indictment charges the offense to have been committed February 18, 1949. Balos Blair was the night watchman and on a night

not fixed by him, but shortly before the indictment was returned he was at his post in the office of the building and heard a noise. He looked around and seeing no one he went back to the office, and in a few moments again heard footsteps; some one opened the office door and he recognized appellant, whom he had known for several years. As Blair moved out into the building, Montgomery ran out a rear door and Baldridge ran to a second floor. Montgomery escaped, and Blair brought Baldridge downstairs, called the police, and they came in a short while and took charge of Baldridge. Montgomery was arrested later. Blair, the only witness for the Commonwealth on direct hearing, was positive that Montgomery was in the warehouse and identified him at the trial.

Appellant denied that he participated in the breaking or entering of the warehouse. He says he was in town on the 18th of February (the date named in indictment) until about 10:30, and at that time went to the home of his brother-in-law and played cards with him and his wife and another young man until 4:30 the next morning, when he and his sister went back to town and he was in company with his sister until about 6:30. Two of the three persons with whom he said he had played cards all night corroborated appellant. The weak point in this testimony is that all witnesses fixed the card game on the night of February 18, though it may be gathered that they were attemptng to fix the particular night as being the night on which the warehouse was broken into. There is some confusion in respect of the time. Other testimony shows the breaking occurred some time in January. Robert Baldridge, co-defendant, was introduced by appellant and testified that he alone broke and entered the warehouse; that Montgomery was not with him. While on the stand he was asked if he had not, on the night he was arrested by three police officers, told them that Montgomery broke a window; opened the door and both he and Montgomery went into the warehouse. He denied that he had made the statement. The three policemen were introduced in rebuttal and all said very positively that he had made the statement to them.

From the evidence adduced it is clear that it was sufficient to take the case to the jury, and to uphold the verdict, and this disposes of grounds (1) and (2),

and which are not forcefully insisted upon as reversible errors. The most of appellant's brief is addressed to the complaint that the court committed prejudicial error in giving instruction No. 1.

In this instruction the jury was told that if they should believe beyond a reasonable doubt that Montgomery "either alone or in company with Robert Baldridge," broke and entered the warehouse, they should find him guilty. The objection is aimed solely at the use of the word "alone," because, as it is argued, there was no proof whatever that Montgomery had committed the offense "alone."

We fail to see wherein the use of the word made the instruction erroneous, or that it could serve to prejudice appellant's substantial rights There was testimony which would indicate that he was alone, as well as testimony that he and Baldridge acted together. We have heretofore approved a similar instruction. section 828, Stanley's Instructions to Juries. Appellant's sole defense was based on his claim and proof that he was elsewhere when the offense was committed.

Our conclusion is that no one of the alleged errors pointed out was sufficient to justify us in reversing the judgment.

Judgment affirmed.