**COMMONWEALTH of Kentucky, DEPART-MENT OF HIGHWAYS, Appellant,**

**v.**

**William C. STAPLES et al., Appellees.**

Court of Appeals of Kentucky.

March 19, 1965.

Robert F. Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Joyce Ferris Nedde, Frankfort, Dandridge F. Walton, Dept. of Highways, Madisonville, for appellant.

Irvin Marcus, Louisville, Leo King, Ulvester Walker, Walker & West, Henderson, for appellees.

HILL, Judge.

A jury of the Henderson Circuit Court awarded appellees $6675.00 for a strip of land three feet wide and 150 feet long, and $1764.00 for diminution of the rental value for temporary easement, a total of $8439.00. Only the Commonwealth appeals.

The strip of appellees' lot is sought for reconstruction of US 41. Prior to the taking, appellees' lot was 150 feet square. A filling station was situated and being operated thereon.

The county court commissioner's report and the county court judgment amounted to $1937.50. The circuit court trial date is September 9, 1963.

Here, verbatim, are the three grounds assigned for reversal:

"I. The Circuit Court erred in refusing to exclude, over appellant's objection, appellees' valuation evidence which was based on the noncompensable element of loss of business.

"II. The jury's award for the fair rental value of the temporary easement is excessive and not sufficiently supported by the evidence.

"III. The Circuit Court erred in overruling appellant's motion for a new trial based on an award of excessive damages which appeared to have been given under the influence of passion and prejudice and in disregard of the evidence and instructions of the court."

■ We consider first the competency of evidence of appellees pertaining to values, before and after the taking. A witness for appellees testified that because of the taking the station's ability to handle the highway and tourist type of trade was "about gone;" that the capacity of the station to accommodate the usual traffic had been impaired; that in arriving at the before and after value of the property, he considered "how many gallons" (gasoline) it will sell before and after. However, the witness did not attempt to fix a value on this item, nor did he give any specific figures or data pertaining to business. Complaint is also made of the argument of counsel for appellees on this evidence. It should be kept in mind that the improvements on appellees' lot were designed for a gasoline filling station, and that the 3' strip taken comes off the front of the property. Before the taking it was 16 feet from the island containing the pumps, to the edge of the right-of-way. After the taking there is 13 feet. Although it cannot be said that this small strip is sufficient to accommodate another line of traffic, certainly it can be said the strip has some considerable value. The taking of this strip has an important bearing upon the after value, and it was not incompetent or prejudicial for the witness to testify he considered this element in arriving at after value. This conclusion is not in conflict with our rule announced in Commonwealth, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963).

■ Appellees were allowed to introduce Exhibit 4, a photograph showing conditions during the use of the temporary easement. This was improper under Commonwealth Dept. of Highways v. Fister, Ky., 373 S.W. 2d 720 (1963), wherein it was said:

"The Commonwealth next contends the court erroneously permitted the owners to introduce pictures showing the condition of the premises during the construction work. These pictures were inadmissible on the ground just discussed which rendered evidence of business losses inadmissible. They tended to prove an injury to the business of the motel caused by unsightly construction operations. * * *"

Appellant did not object to the introduction of this photograph. Hence we do not reverse the case on this ground. Since we are reversing the case for a new trial, for other reasons, we think it proper to point out that such photographic evidence is incompetent and prejudicial and should not be allowed on another trial.

Appellant next contends in parts two and three of its argument that the award of the jury is excessive, both as to value of the land taken and the value fixed for temporary easement. We agree.

It should be kept in mind that the land taken was 3' wide and 150' long; that the temporary easement was used just over three months; that the temporary use was not exclusive. Appellees also used the temporary easement during this time.

■ Appellees' entire lot contained 22,-500 square feet before the taking. Only 450 square feet were taken. To take the highest value, $42,500.00, fixed by appellees' witness, this gives us $1.88 per square foot

for the entire lot with improvements. At this rate the 450 square feet taken amounts to only $846.00. The jury awarded $14.82 per square foot for the strip taken. We are not so unphilosophic as to imply the front of appellees' property is of the same value as the remaining part. It may be, more or less, depending on the location of improvements, the amount and prospective use of the remainder, or other considerations. However, we do not think it is more than seven times as valuable.

Turning to the award for temporary easement, it is clear from the evidence that the two witnesses who testified for appellees considered loss of business during construction. One testified the rental value of the temporary easement was $2,000.00; the other made it $2,500.00. The temporary easement involves approximately 1930 square feet. The award of the jury was $1,764.00, or ninety-one cents per square foot. The rental value of the whole lot before the taking, at this rate, amounts to $20,475.00 for three months.

In Commonwealth of Kentucky, Department of Highways v. Rankin, Ky., 346 S.W. 2d 714 (1961), in a somewhat similar case, this Court said:

"The testimony for the appellee is unconvincing, highly speculative, and contrary to common knowledge. There is no reasonable basis given upon which to rest such unrealistic estimates of values and damages. The damages allowed are so excessive that they appear to have little relation to the true market value of the property before and after the taking, and, as said in the Mauk case, 'strike us as being unreasonable, and such as to show the jury was actuated by passion or partiality or by prejudice.'"

It is our conclusion the case at bar comes within the rule in the Rankin case.

The judgment is reversed, with directions to sustain the motion of appellant for a new trial.